UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-cr-00052-LRH-NJK |
| Plaintiff, | ORDER |
| v. | |
| CHRISTOPHER ROBINSON, | |
| Defendant. | |

Before the court is defendant Christopher Robinson's motion in limine, in which he seeks to exclude evidence of a prior conviction, and defendant's motion requesting the determination of the voluntariness of defendant's statements. ECF Nos. 38, 42. The United States opposes both motions. ECF Nos. 40, 43. An evidentiary hearing was held on August 21, 2018, during which the court also heard oral argument. ECF No. 58. The court now finds the Federal Rules of Evidence and case precedent do not warrant exclusion at trial and that defendant's statements were voluntary. Accordingly, the court denies both motions.

**I.    BACKGROUND**

On January 12, 2018, officers were called to 2201 Constance Avenue in Las Vegas after defendant allegedly threatened to "blow up" his prior landlord's home. ECF No. 38-1 at 3. The ARMOR Task Force conducted a sweep of the home, and located an improvised explosive device ("pipe bomb") on a shelf in the kitchen. *Id.* The pipe bomb was "approximately one foot in length, white PVC pipe having two end caps glued with a screw at each end of each end cap and it had a green fuse inserted into the center of the pipe and sealed with some sort of silicon."

1

ECF No. 38-2 at 3. The Las Vegas Bomb Squad arrived at the scene and rendered the explosive inside the device safe. *Id.* Officials found green match tips and BBs inside the pipe bomb. *Id.* The defendant was later located in a nearby shed and was placed in custody. *Id.* at 4.

While in custody, the defendant was given *Miranda* warnings and interviewed by Detective Solorio and two other officers, from 7:09 a.m. until 7:50 a.m. ECF 25-1 at 8-9, 58. During the interview, the defendant stated he'd previously been arrested in Hawaii in 2011, and that he was currently on parole. *Id.* at 11; *see* ECF No. 40-1 (Guilty Conviction and Sentence was entered on January 2, 2012). The defendant indicated the previous arrest was for possession of marijuana and manufacture of "homemade firecrackers," i.e. pipe bombs, which he described as a pipe, with end caps, filled with matches and gun powder. ECF 25-1 at 14, 46. During the interview, defendant eventually acknowledged the pipe bomb found at 2201 Constance Avenue and described its components—a pipe, with a green fuse and caps glued on the end, filled with match heads, BBs, and gun powder. *Id.* at 56-57. The defendant was then arrested for manufacture and possession of an explosive device under the Nevada Revised Statutes. ECF No. 38-2 at 4.

On February 7, 2018, the United States filed a Complaint against defendant in this court for violation of Title 26, U.S.C. §§ 5841, 5861(d), and 5871. ECF No. 1. Defendant initially appeared in court on February 9, 2018, and was transported from the Clark County Detention Center to the U.S. Marshal Service by FBI Special Agent Leslie J. Moder. ECF Nos. 4, 58. During the transport, SA Moder interviewed the defendant. ECF No. 58. SA Moder gave the defendant *Miranda* warnings, at which point the defendant again confessed. *Id.* Due to a technical error, this interview was not recorded. *Id.*

On February 21, 2018, the Grand Jury indicted the defendant on two counts: Unlawful Possession of a Destructive Device and Felon in Possession of a Firearm. ECF No. 13. The Grand Jury recently returned a superseding indictment that added one count of Unlawful Manufacturing of a Destructive Device. ECF Nos. 62, 63, 64. Defendant is currently detained pending trial, scheduled to begin October 15, 2018. ECF Nos. 17, 52. Defendant filed this motion in limine on July 19, 2018, which the government opposes. ECF Nos. 38, 40. On

August 2, 2018, defendant then filed this motion Requesting the Determination of Voluntariness of Statements under 18 U.S.C. § 3501, which the government also opposes. ECF Nos. 42, 43. The court now rules on both motions.

## II. MOTION IN LIMINE TO EXCLUDE PRIOR CONVICTION

### A. Federal Rule of Evidence 404(b)

Generally, all relevant evidence is admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Further, the determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008).

But a motion in limine can preclude prejudicial or objectionable evidence before it is presented to the jury. Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2018). The decision on a motion in limine is entrusted to the district court's discretion— including the decision of whether to rule on the motion prior to trial. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless the "evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on pretrial motions in limine are not binding on the court, but rather, it has the discretion to alter its ruling at trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

While evidence of prior bad acts is inadmissible under the federal rules to prove the defendant acted in conformity with his "character," such evidence is admissible to show proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident" as evidenced by the prior bad acts. Fed. R. Evid. 404(b). To properly admit evidence under 404(b), the evidence must (1) "'prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior

3

conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based on sufficient evidence; and (4) the prior conduct must not be too remote in time.'" *See United States v. Bundy*, 2:16-cr-46-GMN-PAL, 2017 WL 4803936, at *2 (D. Nev. Oct. 24, 2017) (quoting *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *see also United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004); *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012).

**B. Defendant's Motion in Limine is Denied**

The court finds that the government has successfully met its burden under this test. First, the evidence is being offered to prove a material element of the crime charged. To convict the defendant of Unlawful Possession of an Unregistered Destructive Device, in violation of 26 U.S.C. § 5861(d), the government must prove beyond a reasonable doubt that the defendant (1) knowingly possessed the destructive device, the pipe bomb; (2) was aware that it was a destructive device; and (3) had not registered the device with the National Firearms Registration and Transfer Record. *See* Ninth Cir. Manual of Model Criminal Jury Instructions, 9.34. The government must also prove the defendant knew of the features of the pipe bomb that would bring it within the scope of the statute. *See Staples v. United States*, 511 U.S. 600, 619 (1994). The government thus attempts to admit evidence of defendant's prior conviction in Hawaii, for manufacture and possession of a pipe bomb, in order to prove the defendant knew the device police recovered here was explosive and destructive, a material element of the crime charged.

Second, the device recovered here is substantially similar to the device the defendant was convicted of manufacturing and possessing in Hawaii. The defendant described both pipe bombs as being made of pipe, with glued caps on the ends, a fuse, and filled with matches and gun powder. The only difference was the type of shrapnel and fragmentation found inside: in Hawaii, the pipe bomb was filled with rusty nails (ECF No. 40 at 4), while here, the pipe bomb was filled with BBs.

Third, there is little concern over the sufficiency of the evidence of the prior act: the defendant pled guilty and was convicted of the act. Finally, the prior conduct is not too remote:

1 the defendant's conviction was entered on January 20, 2012, just six years, almost to the day of
2 this incident, and the defendant was still on parole.

3 The court now turns to whether the probative value of admitting defendant's prior
4 conviction is substantially outweighed by a danger of unfair prejudice. Unless "its probative
5 value is substantially outweighed by a danger of . . . unfair prejudice," evidence that meets the
6 four-part test should be admitted. Fed. R. Evid. 403; *United States v. Blitz*, 151 F.3d 1002, 1008
7 (9th Cir. 1998). When the court instructs the jury on the limited purpose for which the evidence
8 is admissible, the probative value of the evidence is generally not substantially outweighed by
9 the danger of unfair prejudice. *See United States v. John*, 683 Fed. Appx. 589, 594 (9th Cir.
10 2017) ("the probative value of the evidence was not substantially outweighed by the danger of
11 unfair prejudice, because the district court instructed the jury, both during and at the end of trial,
12 that such evidence was" admissible for a limited purpose).

13 The court now finds that a limiting jury instruction requiring the jury to only consider this
14 evidence for the purpose of determining knowledge, intent, or identity will adequately protect the
15 defendant's rights and will not subject him to unfair prejudice. Further, as discussed at oral
16 arguments, both parties agree that the evidence can be properly admitted for these limited
17 purposes. Accordingly, defendant's motion to exclude this conviction is denied. However,
18 should issues arise at trial regarding admissibility, the court will hear objections, and further
19 reminds the parties that the court has the discretion to amend, renew, or reconsider this ruling in
20 response to those events. Counsel are instructed to meet and confer for the purpose of drafting
21 and approving a proposed limiting instruction for use by the court at trial.

**III. MOTION TO DETERMINE VOLUNTARINESS**

**A. Voluntariness is Determined by the Totality of the Circumstances**

24 The government bears the burden of establishing the voluntariness of a confession by a
25 preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The court
26 will look at the totality of the circumstances in order to determine whether the defendant's will
27 was overborne, *Dickerson v. United States*, 530 U.S. 428, 434 (2000), such that the confession

was not "the product of an essentially free and unconstrained choice by its maker," *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961).

In considering the totality of the circumstances, the court looks at such factors as "[t]he length of the questioning, the use of fear to break a suspect," *Gallegos v. Colorado*, 370 U.S. 49, 52 (1962) (internal citations omitted), "the declarant's state of mind, the physical environment in which the statement was given, and the manner in which the declarant was questioned," *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). While promises of leniency "sufficiently compelling to overbear the suspect's will," can render a confession involuntary, "an interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). Further, even if *Miranda* warnings are given, the court must still make a separate inquiry as to the voluntariness of the statements. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000) ("The requirement that *Miranda* warnings be given does not dispense with the voluntariness inquiry . . .").

The Ninth Circuit has held that "an intoxicated individual can give a knowing and voluntary waiver, so long as that waiver is given by his own free will." *Matylinsky v. Budge*, 577 F.3d 1083, 1095 (9th Cir. 2009); *see e.g.*, *United States v. Banks*, 282 F.3d 699, 706 (9th Cir. 2002) ("[a] confession made in a drug or alcohol induced state, or one that is the product of physical or psychological pressure, may be deemed voluntary if it remains 'the product of a rational intellect and a free will.'") (internal citations omitted), *rev'd on other grounds*; *United States v. Lewis*, 833 F.2d 1380, 1390 (9th Cir. 1987) (defendant's responsive, alert statements were knowingly and voluntarily made even though she received a general anesthetic several hours prior to making the statements); *United States v. Martin*, 781 F.2d 671, 674 (9th Cir. 1985) (the district court properly concluded that statements made by a defendant on Demerol—who was able to sit up in bed, make eye contact, was relatively coherent, and not unconscious or comatose due to the medication—were voluntary); *U.S. v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992) (even though defendant was exhibiting signs of heroin withdrawal—chills, shaking, and

trembling—defendant's statements were voluntary because he was coherent, responsive, and his ability to think rationally was not overcome by the withdrawal symptoms); *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989) (the court concluded that even though the defendant was intoxicated, it "was insufficient to overcome his free will and rational intellect . . ."). *Compare with Mincey v. Arizona*, 437 U.S. 385, 398-99 (1978) (defendant's statements made while he was "encumbered by tubes, needles, and [a] breathing apparatus," in a hospital bed, and made while he was "confused and unable to think clearly about events of the afternoon," were not voluntary).

From these factors, "there is no 'single controlling criterion,' no single factor . . . [that] can be dispositive." *United States v. Preston*, 751 F.3d 1008, 1017 (9th Cir. 2014) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Instead, "[c]ourts must 'weigh, rather than simply list,' the relevant circumstances, and weigh them not in the abstract but 'against the power of resistance of the person confessing.'" *Preston*, 751 F.3d at 1017 (quoting *Doody v. Ryan*, 649 F.3d 986, 1015-16 (9th Cir. 2011)).

**B. Defendant's Statements Were Voluntary**

To properly protect the defendant's constitutional rights, the court held an evidentiary hearing to determine if defendant's statements were voluntary. *See Jackson v. Denno*, 378 U.S. 368, 376 (1964). The court first addresses the initial interview of the defendant on January 12, 2018. First, while the defendant had not yet been arrested, he was in custody during the confession. However, while in custody, the defendant was or should have become aware of the potential charges, possession and/or manufacturing a pipe bomb, early on in the interview. Detective Solorio stated: ". . . [T]here were some pipe bombs that were discovered and people had seen you with those pipe bombs. . . . So you didn't happen to leave one here? . . . Because we have witnesses who state that they saw you with a pipe bomb, or a homemade firecracker you like to call them." ECF 25-1 at 14-15. From this point forward in the interview, the defendant is clearly aware that the detectives are questioning him because they believe he possessed and/or manufactured one or more pipe bombs.

Second, while the defendant did not have the assistance of counsel while making the statement, at the beginning of the interview Detective Solorio indicates that he read the

defendant his *Miranda* rights. *Id.* at 9. The defendant then states on the record that this is true and that he is willing to speak with the officers. *Id.* The defendant even adds that he has "nothing to hide." *Id.*

Third, while the defendant was questioned in the confined environment of an unmarked police car, and interviewed by three officers, this questioning lasted less than one hour, from 7:09 a.m. to 7:50 a.m. *Id.* at 9, 58.

Fourth, the defendant argues that the officers made promises and offers of leniency to him such that the confession was involuntary. The court does not agree. The case precedent on this issue is clear: a confession is not involuntary simply because an officer offers to speak with the court or the prosecuting attorney. Therefore, the court finds that Officer Solorio's statements, including, "[s]o you help me I help you. . . . Because guess what I will help you. 100%. . . . But guess what, when the DA comes up and talks to me, I'll talk to them. . . . I usually don't. When people don't want to help themselves out I don't help them out. . . . Or presenting a case and saying you know something your Honor. This guy I don't think he's a bad guy. I can talk to the DA. Cause the DA is gonna [sic] come up to me and ask me. . . . And guess what, we can always talk to parole, we can talk to the DA," were not impermissible promises of leniency. *Id.* at 28, 36, 42, 49, 53.

Fifth, the defendant has a history with law enforcement and is not new to the criminal justice system. At the beginning of the interview he indicated to the officers that he was on parole. *Id.* at 11. After Detective Solorio tells the defendant that they have a search warrant for the house, he indicates, "I would have given you consent to search." *Id.* at 33-34. Further, the defendant is aware of the tactics the detectives are using when asking him questions. He states, "Ok, and I know what you guys are trying to do. Trying to get a confession. Ok I'm not gonna [sic] confess to something I didn't do. Ok. You say you're gonna [sic] help me out or whatever. Thank you for, you know what I mean. But I'm not confess [sic] to something I didn't do." *Id.* at 41. These instances all indicate to the court that the officers did not overcome the defendant's will with coercion, but rather that the defendant made the decision to confess to the officers of his own free will.

Finally, while a confession made while a defendant is under the influence may be inadmissible if it is not the product of rational intellect or free will, that is simply not the case here. Detective Solorio did indicate that he believed the defendant may have been under the influence—he was jittery, drymouthed, and flapping his lips. However, the defendant was not so impaired such that this court must find his statements were involuntary. In the interview the defendant appears coherent, is able to answer the detective's questions cogently, and clearly knows the events of past history, including, when he moved in and out of the property and when he was previously convicted. The court therefore finds, when weighing all of these factors, that during this interview the defendant's statements were voluntarily made.

Turning now to defendant's confession to SA Moder on February 9, 2018. The defendant had been in custody at this point for almost one month and did not appear to be under the influence. ECF No. 58. SA Moder testified that he gave the defendant another set of *Miranda* warnings prior to questioning him and that the defendant was polite, cooperative, and overall helpful. *Id.* The defendant told SA Moder about the component parts of and how he built the pipe bomb. *Id.* However, SA Moder did not have the defendant sign a waiver prior to the questioning, the defendant was handcuffed, and the approximately forty-minute questioning took place in an unmarked FBI vehicle parked outside the Clark County Detention Center. *Id.* Due to a technical error, the interview was not recorded. *Id.*

The court cannot find the defendant's statements here were involuntary either. The defendant was given *Miranda* warnings again, and there is no evidence the officer used coercive techniques such that the defendant's will was overborne. Further, the defendant was on his way to court and had just been informed that he was being charged federally. The questioning was of relatively short duration, just forty-minutes, and the defendant coherently and cooperatively answered the agent's questions. In weighing the factors, the court finds the defendant's statements during this interview were voluntary.

///

///

///

## IV. CONCLUSION

IT IS THEREFORE ORDERED that defendant's motion in limine (ECF No. 38) is **DENIED**.

IT IS FURTHER ORDERED that defendant's statements were **VOLUNTARY** (ECF No. 42).

IT IS SO ORDERED.

DATED this 20th day of September, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE